| | |
|---|---|
| RONALD MATHIS, #348493, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-87 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| NANCY LANGE, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| _____) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Defendant Nancy Lange[1] is the Health Unit Manager at the Lakeland Correctional Facility (LCF). Plaintiff alleges that defendant violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause because she failed to authorize "needed items" and the pain medications that plaintiff desired in the course of post-surgical care for his broken little finger (digitus quintus). He sues defendant in her individual capacity and seeks an award of damages and injunctive relief.

The matter is before the court on defendant's motion for summary judgment. (docket # 6). She seeks dismissal of plaintiff's complaint based on the affirmative defense of plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) before filing this lawsuit. Plaintiff has filed his response (docket # 9), and the motion for summary

---

[1] The case caption has been amended to incorporate the spelling of defendant's last name as it appears in her motion for summary judgment and supporting brief. (docket #s 6, 7).

judgment is ready for decision. Upon review, I recommend that defendant's motion be granted, and that a final judgment be entered dismissing all plaintiff's claims against defendant without prejudice.

**Summary Judgment Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.[2] FED. R. CIV. P. 56(a); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the

---

[2]The court must apply the current version of the Federal Rules of Civil Procedure. *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 n. 2 (6th Cir. 2002). "The standard for granting summary judgment remains unchanged" under the amendments to Rule 56 that went into effect on December 1, 2010. *See* FED. R. CIV. P. 56 advisory committee note (2010 amendments).
    Neither party has objected to the admissibility or authenticity of any exhibit submitted by the opposing party. (docket #s 7-2 through 7-9 and 9-3 through 9-6). *See* FED. R. CIV. P. 56(c)(2); *see also Sanders v. Armstrong*, No. 09-cv-36, 2011 WL 589910, at * 1-2 (E.D. Ky. Feb. 10, 2011). Objections to the exhibits have therefore been waived. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993); *see also Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1194 n.8 (10th Cir. 2010). Further, the absence of authenticating affidavits required under former Rule 56(e)(1) does not result in a "gross miscarriage of justice." *See Johnson v. United States Postal Serv.*, 64 F.3d 233, 237 (6th Cir. 1995).

nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden

of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendant has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies and seeks dismissal of plaintiff's claims on that basis. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed"

complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24. Claims that are not fairly presented through the grievance process remain unexhausted.[3]

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *See Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. *Id.* at 90-93; *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 ¶ R (effective 07/09/2007)[4] requires that the prisoner name within the body of his grievance the person whose conduct is challenged. In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed

---

[3]"Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a full and fair opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

[4]*See* docket # 7-2, ID #s 45-51.

the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the prisoner's grievance. The following is an overview of the grievance process. Inmates must first "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his or her control." *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The inmate submits the grievance to a designated grievance coordinator, who determines whether it should be rejected under MDOC policy or assigns it to a respondent. *Id.* at ¶¶ W, X. Prisoners are required to use "a Prisoner/Parolee Grievance (CSJ 247A) [form] to file a Step I grievance." *Id.* at ¶ R. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Regional Health Administrator or his designee is the Step II respondent for a grievance regarding health care issues. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. The Grievance and Appeals Section forwards grievances regarding

health care issues to the Administrator of the Bureau of Health Care Services (BHCS). "The BHCS Administrator shall ensure that the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner." *Id.* Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir. 2004).

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is in the custody of the Michigan Department of Corrections. At all times relevant to this lawsuit, he has been an inmate at the Lakeland Correctional Facility (LCF). On December 9, 2009, plaintiff broke his "pinkie" finger. It was surgically repaired on December 19, 2009, and on January 29, 2009, an implanted pin was removed.

On Friday, February 6, 2009, Prisoner Keith Davis observed that plaintiff's surgically repaired finger was bleeding, and he watched plaintiff go to the housing unit officer's desk. (Davis Aff. ¶¶ 1-3, docket # 9-3). Davis observed the housing unit officer make a telephone call. (Davis Aff. ¶ 3). Plaintiff's medical records indicate that this call occurred at approximately 11:54 a.m. and that it was received by Nurse Austin:

> Note date: 02/06/2009     Time of note: 11:54 AM     Entered by: Lois J. Austin, RN
> Phone triage: Hand (pinky) finger is cramping. Post fx with fixation device recently removed. States he was instructed by offsite MP on exercise and he has been doing that but finger tends to cramp up. Already has kite in and is scheduled re: same.
>
> Note date: 02/06/2009     Time of note: 11:54 AM     Entered by: Lois J. Austin, RN
> [C]oncern. Instructed to cont. Naprosyn, do not exercise finger to point of causing cramping. Increase ROM as tolerated. Verbalized understanding.

(docket # 9-5, ID # 112).

Plaintiff had been scheduled for a healthcare appointment on Monday, February 9, 2009. His medical records indicate that this appointment was canceled at 5:53 p.m. and rescheduled for another date "due to time restraints in healthcare." (docket # 9-6, ID # 114).

On February 9, 2009, plaintiff typed a lengthy grievance against the prison's "Health Service Department." He left blank the portion of the MDOC's grievance form where he was required to explain his attempt to resolve the issue before filing his grievance or to explain why he had not made the attempt. (docket # 7-4, ID # 61). His grievance requested stronger pain medication and referral to a specialist. He blamed his limited range of finger motion on the health unit manager's (HUM's) "inaction" to comply with "protocols" handed down by the chief medical officer's department:

> This grievance is being filed against the HEALTH SERVICE DEPARTMENT, here @ LCF, for violation of MDOC Policy and BHS protocol. This grievance is being filed pursuant to

PD 03.02.130(E). My medical file will reflect my finger was broken on December 9, 2008; that I had surgery performed on December 19, 2008, and on January 19, 200[9] I was given a MEDICAL DETAIL for ice times three days. It has been fifty two (52) days since the surgery. I was denied any and all physical therapy. In spite of numerous medical request[s] to address this issue, I was only offered rhetoric. I have been told to: "CONTINUE MY TREATMENT PLAN", when there never was any "TREATMENT" given, less the naprosyn. In short my finger now has very limited movement. I was denied EPSOM SALTS to soak my finger, and as I aforementioned I cannot even use the finger in question. I am in extreme pain! The metal pin was removed on January 29, 2009 [12 days ago] and no matter what I do the finger no longer works. I'm in fear that the MEDICAL DEPARTMENT[']S inaction has lead to the healing of my finger in the position it is now "stuck" in. According to PD 03.04.100, the BHCS shall be responsible for the department[']s HEALTH SERVICE PROGRAM. Including monitoring ALL HEALTH CARE SERVICES. Based upon the HUM's inaction at comply to [sic] protocols handed down by the Chief Medical Officer[']s Department, herein, grievant respectfully request[s] to be seen [b]y the "PAIN MANAGE-MENT COMMITTEE,["] due to the extreme pain he now endures, and to be seen by a specialist to see if I have lost permanent use of my finger due to the inactions of LCF Health Service Department.

(docket # 7-4, ID # 61).

On February 12, 2009, LCF's grievance coordinator received plaintiff's grievance and assigned it Grievance Number LCF-2009-02-0169-28I. The grievance was rejected because plaintiff "failed to attempt resolution of [the] complaint prior to filing [his] grievance." (docket # 7-4, ID # 61). It was noted that plaintiff had received follow-up examinations and medical care on at least twenty-six occasions after his injury. (*Id.* at ID # 62).

Plaintiff argued in his Step II appeal[5] that the phone calls made on February 6, 2009, by his housing unit officer to Nurse Austin, and a second call purportedly made by the housing unit officer on February 9, 2009, should be considered adequate attempts to resolve the issues with the person named in his grievance. The Step II respondent disagreed and affirmed the Step I decision. (docket # 7-4, ID # 60).

---

[5]Plaintiff's Step II appeal stated that he began physical therapy on March 18, 2009. (docket # 7-4, ID # 60).

Plaintiff pursued a Step III appeal where he criticized the Step II response as "inadequate and vague" and he demanded that his finger be restored to normal use or that he receive compensation for "negligent" treatment. On July 23, 2009, the Grievance and Appeals Section denied plaintiff's Step III appeal because he had not attempted to resolve his concerns with prison staff before filing his grievance: "PD 03.02.130(G)(3) provides that the grievance may be rejected if the grievant made no attempt to resolve the issue with staff involved prior to filing the grievance. The only exceptions to consider would be if the grievant could not resolve the issue with staff due to circumstances beyond his/her control or, if the issue falls within the jurisdiction of the Internal Affairs Division. In reviewing you[r] grievance there is no apparent reason why you did not attempt to resolve your issue with staff as indicated in policy. . . . Your grievance appeal is denied." (docket # 7-4 at ID # 59; *see* docket # 7-2 at ID # 46).

On August 13, 2009, plaintiff drafted a grievance against LCF's "health care" requesting stronger pain medication. This grievance did not mention defendant:

> This grievance is being written against health care for the following reasons:
>
> I am having severe pain and suffering due to an injury I received while working in Food Service. However, after surgery I was given a steroid shot to relieve some of the pain (to no avail) in which Dr. Lacy told me I would basically have to deal with the pain.
>
> On 8-10-09 I received a health care kite response informing me to take Tylenol-Motrin from the store, which I have been taking to no avail. I have also exclaimed many times to health care that this medication has no effect, and that it will le[a]d to a more serious problem with continuous use, e.g., bleeding stomach ulcers.
>
> RELIEF REQUESTED: TO BE SEEN BY A SPECIALIST and/or REFERRED TO PAIN COMMITTEE.

(docket # 7-5 at ID # 68). The grievance coordinator received the grievance on August 18, 2009, and assigned it Grievance No. LCF 2009-08-0822-12F3. The grievance was rejected at Step I because

plaintiff made no attempt to resolve the issue with health care before filing the grievance. (docket # 7-9 at ID #s 68-69). Plaintiff's Step II appeal was denied on November 16, 2009:

> The grievant has been evaluated multiple times for this complaint. The grievant received physical therapy to assist with his condition. The grievant was most recently evaluated by the medical provider (MP) on 11/11/09. The MP ordered medication, requested Regional Medical Officer (RMO) review for assistive devices, and scheduled a follow up encounter. The RMO reviewed the grievant's record and recommended self massage/stretch and buddy tape to other finger. The grievant's healthcare needs have been addressed. Grievance denied.

(docket # 7-5, ID # 66). On January 6, 2010, the Grievance and Appeals Section denied plaintiff's grievance Step III appeal because the Step II decision provided an appropriate response. (docket # 7-5 at ID # 64).

On January 29, 2010, plaintiff filed this lawsuit.

**Discussion**

"The exhaustion provision of the PLRA states: 'No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.'" *Jones v. Bock*, 549 U.S. at 204 (quoting 42 U.S.C. § 1997e(a)). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. In order for a claim to be exhausted, it must be fairly presented to prison officials through the grievance process. *Woodford*, 548 U.S. at 94. In addition, the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90.

Under the MDOC's policy directive in effect in February 2009, plaintiff was required to take the following action before filing a grievance:

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of the grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

Policy Directive 03.02.130, ¶ P (effective 07/09/07)(docket # 7-2 at ID # 47).

Plaintiff argues that the telephone call he made on February 6, 2009, to Nurse Austin through a housing officer should be deemed adequate to satisfy his obligation under the policy directive for the claims he asserted in his February 2009 grievance.[6] (Plf. Brief at 2, 4). Plaintiff's medical records reveal that he complained of finger cramps and received advice from Nurse Austin regarding appropriate care. The phone call was not an attempt to resolve any issue with defendant Lange. Plaintiff's argument that he was prevented from attempting to resolve this matter with defendant because his appointment on Monday, February 9, 2009, was canceled (Plf. Brief at 4) is patently meritless. Plaintiff's belated assertion that he was prevented from attempting to resolve this matter with defendant is conspicuously absent from his grievance. (docket # 7-4, ID # 61). Further, assuming that plaintiff became aware of a grievable issue involving defendant Lange on Friday, February 6, 2009, he had "two business days after" that date -- until Tuesday, February 10, 2009 -- to attempt to resolve the matter with defendant. Plaintiff filed his grievance on Monday, February

---

[6]Plaintiff concedes that the "sole grievance applicable to this case is the grievance filed on February 09, 2009 under grievance identifier code number LCF-2009-02-0169-28I." (Plf. Brief at 7). Defendant is not mentioned anywhere in plaintiff's August 2009 grievance and there is no evidence she had any role in prescribing plaintiff's medications.

9, 2009, without making the attempt at pre-grievance resolution required under P.D. 03.02.130, ¶P. I find that plaintiff did not properly exhaust any claim he is asserting against defendant.

The only remaining question is whether the dismissal should be with or without prejudice. Generally, the dismissal of claims for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) is without prejudice. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006). Defendant has not presented any developed argument why dismissal with prejudice would be appropriate.

It is virtually certain that any grievance plaintiff might now file against defendant would be rejected as untimely at Step I, and upheld on that basis at Steps II and III. A grievance so rejected would provide a basis for dismissing plaintiff's claims with prejudice because "proper exhaustion still requires compliance with the grievance policy's critical procedures such as timeliness." *Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 889 (6th Cir. 2009) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (stating that dismissal for failure to exhaust is without prejudice and does not bar the reinstatement of the suit, unless it is too late to exhaust)). However, the Sixth Circuit's decision in *Reed-Bey v. Pramstalller* suggests that the court should not anticipate a future events, but should instead wait and see whether the State actually enforces its procedural rules. 603 F.3d at 325-26.

### Recommended Disposition

For the reasons set forth herein, I recommend that defendant's motion for summary judgment (docket # 6) be granted, and that a final judgment be entered dismissing all plaintiff's claims against defendant without prejudice.

Dated:  March 9, 2011           /s/  Joseph G. Scoville
                                United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).